KETCHUM v. DENVER & R. G. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1917.)

No. 4933.

1. MONOPOLIES ⬥⟹24(1)—ANTI-TRUST ACT—RIGHT OF INDIVIDUAL TO MAINTAIN SUIT.

A complainant, who shows no injury to himself, other than as a member of the general public, cannot maintain a suit for violation of the provisions of Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. 1916, § 8820 et seq.), prohibiting monopolies or combinations in restraint of interstate commerce.

2. CARRIERS ⬥⟹34—INTERSTATE COMMERCE ACT—COMMODITIES CLAUSE—SUITS FOR VIOLATION.

A bill *held* not to show such personal wrongs or injury to the complainant as to entitle him to maintain a suit for the appointment of receivers for coal companies on the ground of violation of the commodities clause of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379, as amended by Act June 29, 1906, c. 3591, § 1, 34 Stat. 584, 585 [Comp. St. 1916, § 8563 (6)]).

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by Truman A. Ketchum against the Denver & Rio Grande Railroad Company and others. Decree for defendants, and complainant appeals. Affirmed.

E. A. Walton, of Salt Lake City, Utah (C. A. Boyd, of Ogden, Utah, and T. D. Walton, of Salt Lake City, Utah, on the brief), for appellant.

Henry McAllister, Jr., of Denver, Colo. (Waldermar Van Cott, E. M. Allison, Jr., and W. D. Riter, all of Salt Lake City, Utah, on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

CARLAND, Circuit Judge. Appellant, hereafter called plaintiff, commenced this action against appellees, hereafter called defendants, except when separately named, and in his complaint prayed that said defendants be perpetually enjoined from violating the provisions of the commodities clause of the Interstate Commerce Act, from violating the Sherman Anti-Trust Act, and also prayed that a receiver be appointed to take charge of the property and assets of the coal companies, to the end that they might be operated independently of the railroad company. Defendants filed motions to dismiss the complaint, and upon argument the same was dismissed for want of equity. From the judgment of dismissal, plaintiff appealed.

The complaint alleged: That plaintiff was a citizen of the state of Oregon; that the defendant the Denver & Rio Grande Railroad Company, hereafter called railroad company, was a corporation of the state of Utah, and was incorporated on or about June 9, 1909; that the defendant Utah Fuel Company was a corporation of the state of

New Jersey, having its principal place of business in Salt Lake City, Utah; that the defendant Pleasant Valley Coal Company was a corporation of the state of Utah; that the directors of the railroad company were Samuel F. Pryor, Edward D. Adams, George J. Gould, Kingdon Gould, David H. Taylor, Finley J. Shepard, Edward T. Jefferey, Arthur Coppell, Benjamin McAlphin, Thomas L. Chadbourne, Jr., and H. U. Mudge; that Mudge was president, Kingdon Gould vice president, and Jefferey chairman of the executive committee; that Jefferey directed, and for a long time had directed, the actual conduct of the business of said corporation, being the personal representative of the Gould interests; that the officers of the Utah Fuel Company were Edward T. Jefferey president, Kingdon Gould vice president, A. H. Cowie vice president, Jesse White treasurer, E. A. Greenwood assistant treasurer, and S. C. Matthews secretary; that Jesse White was also assistant treasurer of the railroad company; that E. A. Greenwood was also cashier of the railroad company and S. C. Matthews was assistant auditor of the railroad company; that the affairs and business management of said company for a long time had been, and now were, under the immediate direction and control of said Edward T. Jefferey, acting through the said A. H. Cowie, the chief executive officer of said fuel company in the state of Utah; that the officers of the said Pleasant Valley Coal Company were A. H. Cowie director and president, Edward T. Jefferey director, W. O. Williams director and vice president, E. A. Greenwood director, secretary, and treasurer, W. S. Cooper director; that said W. O. Williams was the auditor of the Utah Fuel Company, and W. S. Cooper was a clerk in the employ of the Utah Fuel Company; that all of the business and affairs of the said Pleasant Valley Coal Company for a long time had been, and now were, under the immediate direction and control of said Edward T. Jefferey.

That plaintiff was at the time of the bringing of the suit (June 14, 1916), and for some time theretofore had been, a stockholder of the defendant railroad company and the owner of 10 shares of the common capital stock of said company, of the par value of $1,000 and of substantial market value; that the railroad company had no authority under its charter or the laws of Utah to own or hold corporate stock generally, nor corporate stock in coal-mining or coal-owning companies or corporations, nor to engage in the business of coal or coke producing; that by the articles of incorporation of said railroad company the ownership of stock in any coal owning, mining, or operating company was only permissible or authorized as a means or method of the railroad company to own the mine itself and the product thereof; that the defendant Pleasant Valley Coal Company was incorporated in the year 1882, and was engaged in the business of acquiring and holding coal lands as a mere arm, instrumentality, department, and agency of the railroad company; that the defendant Utah Fuel Company was incorporated about the year 1901, and since such time its sole business had been the same as that of the Pleasant Valley Coal Company, being the nominal owner of the entire capital stock of the Pleasant Valley Coal Company, and that the complete control of its

affairs and the beneficial ownership of its stock had at all times since June 9, 1909, been in the defendant railroad company; that the defendant railroad company is an interstate railroad, extending from the city of Grand Junction, in the state of Colorado, to the city of Ogden, in the state of Utah; that said railroad company was the owner of all the capital stock of the defendant Utah Fuel Company, aggregating $10,000,000, and through said Utah Fuel Company the owner of the entire capital stock of the Pleasant Valley Coal Company, aggregating $2,000,000; that the management of the railroad company had always elected and named the directors and executive officers of the two subsidiary coal companies, and caused to be directed and managed all of the affairs and business of the said subsidiary companies, not as independent companies, but wholly in the interest of the said railroad company, and as mere agencies and departments thereof; that said railroad company received all the profits, dividends, and earnings of every kind and nature arising from the business and property of said coal companies; that there is produced annually in the state of Utah about 3,000,000 tons of bituminous coal, a little over half of which is produced by the said railroad company through said coal companies in addition to which the said railroad company produces annually through its said subsidiaries over 300,000 tons of coke, being substantially all of the coke produced in the state of Utah, and that about 150,000 tons of said coke is annually transported to and used in other states; that over 500,000 tons of coal is annually shipped from Utah to other states; that said defendant railroad company, through its said subsidiaries, owns and operates, and for many years has owned and operated, seven mines in Carbon county, Utah, viz. Winterquarters, Castle Gate No. 1, Castle Gate No. 2, Clear Creek Utah mine, Sunnyside No. 1, and Sunnyside No. 2, with an annual production of over 1,500,000 tons; that said railroad company by means of its subsidiaries, fixes the price at which all coal is sold at the mines, thereby preventing competition among the producers of coal in the territory mentioned; that said railroad company favors and grants undue preferences to its said subsidiaries in the furnishing of cars and train service for the movement of coal of said defendants both as regards intra and interstate commerce.

That said railroad company maintains, and for a long time has maintained, a station known as Castle Gate, in Carbon county, Utah, and publishes tariffs showing traffic rates, both freight and passenger, thereto and therefrom; nevertheless it gives out and pretends that it has no real property at said point, and permits said subsidiaries to occupy, direct, and control all the railroad facilities and loading and unloading places at said point, and to prevent competitors in the coal business from unloading their freight at said station; that the Ketchum Coal Company was, and for several years had been, a corporation owning and attempting to operate a coal mine about 1,300 feet northerly from the railroad tracks of the defendant railroad company at said Castle Gate station; that said Ketchum Coal Company brought a suit against the defendants, and others, to condemn a right of way over ground claimed to be owned by said defendants from its said mine to the

tracks of the railroad company; that up to the time of the bringing of said suit the defendant railroad company had no competitors of any kind at or in the vicinity of said Castle Gate station, and the defendants were at such point operating the said railroad and two coal mines, and during all said times the said defendants had combined unreasonably and conspired in restraint of trade and commerce among the several states, and had confederated together to prevent the said Ketchum Coal Company from operating its said mine and shipping its product; that in said condemnation proceeding in the year 1913, the court in which such action was pending gave to the Ketchum Coal Company by order, exclusive possession of a strip of ground 60 feet in width and extending from its said mine to the tracks of said railroad company, except a joint possession with the said Pleasant Valley Coal Company of a certain crossing of a tramline of the said Pleasant Valley Coal Company, and said court at the same time enjoined the said coal companies from interfering in any manner with such possession; nevertheless the defendants have at all times, and especially since the 7th day of April, 1916, unlawfully and unreasonably combined and confederated together in restraint of trade and commerce among the several states and conspired to prevent the said Ketchum Coal Company from using said premises and such right of way for the purpose of transporting its coal to the tracks of said railroad company, notwithstanding at all said times said Ketchum Coal Company had orders for its coal to be shipped in interstate commerce from said mine to purchasers, and but for the said conspiracy and combination as hereinbefore stated the said Ketchum Coal Company would have filled such orders and shipped its coal in interstate commerce; that in furtherance of said unlawful combination and conspiracy the said defendants had continuously since April 5, 1916, maintained a large number of wires charged with electric current of a voltage of 4,400 volts over and across said premises and said right of way, in such manner and at such places as to wholly prevent the said Ketchum Coal Company from in any manner using the said premises and the said right of way for the transportation therefrom of its said coal; that the said Ketchum Coal Company had a developed mine at such place, and but for the wrongful acts aforesaid would have shipped many thousands of tons of coal, some of which in interstate commerce over the lines of the defendant railroad company to its advantage as a railroad company, if not to its advantage as the owner of the said subsidiary and competing coal companies.

That on or about November 24, 1915, at Salt Lake City, Utah, in a conference concerning facilities for the Ketchum Coal Company at Castle Gate, between Truman A. Ketchum and L. R. Eccles, representing the Ketchum Coal Company, and said Edward T. Jefferey and A. H. Cowie, representing the defendants herein, the said A. H. Cowie declared he would deplete the treasury of the Utah Fuel Company before he would allow the Ketchum Coal Company to ship one car of coal from that camp, and the said Edward T. Jefferey then and there declared that he would not agree to the Ketchum Coal Company operating at Castle Gate; that by reason of the constitution of

the board of directors of the said defendant coal companies the said railroad company makes and has continually made of such boards merely administrative officers of said railroad company; that neither of said boards of said coal companies acts, nor had acted, as an independent board, but, on the contrary, merely as dummies and clerks to record and carry out the will of the railroad company; that said railroad company uses the said coal companies as mere devices to enable the said railroad company to violate the provisions of the commodities clause of the Interstate Commerce Act, and to unduly and unreasonably restrain trade and commerce between and among the several states and to fix the prices of coal at the mines to the purchaser and in the markets to the consumer; that neither of said coal companies is a bona fide mining company, and neither of said coal companies fixes its selling price of coal at the mines solely upon those considerations which in the case of independent companies determine the price, but, on the contrary, at times they fix the selling price at the mines unreasonably low, while at the same time the said railroad company fixes the freight rate unreasonably high with the result that the consumer is not benefited, while the said railroad company, not only suffers no loss by reason of the low price at the mines, but reaps an undue and unconscionable advantage by reason of the excessive freight rate applying on independent coal which it collects from other shippers, and at the same time restrains and controls the usual and natural competition in the production of coal.

That said railroad company ever since its organization has been in legal effect the owner of and has had a pecuniary interest in the coal mines of said coal companies, and ever since the organization of said railroad company it has been largely engaged through the instrumentality of its said agencies and departments, namely, its said codefendants, in producing large quantities of coal and coke, and at all said times the said defendant railroad company has been transporting in interstate commerce for commercial purposes many hundreds of tons of said coal and coke daily, all in violation of the act of Congress commonly known as the Interstate Commerce Act; that by reason of the acts of said railroad company it continually and daily incurs a liability to suits and prosecutions under the laws of the United States, and of having its funds diverted from their proper purposes to the payment of heavy damages, costs, expenses, forfeitures, penalties, and fines because of the violation of said laws, and also the liability of having its charter revoked and to be dissolved as a corporation and lose its franchises, thereby rendering its shares of capital stock, especially its common stock, entirely and utterly worthless, to the great and irreparable damage and loss of the plaintiff and all other common stockholders in said corporation.

So far as the plaintiff is personally concerned, the case presented by the complaint does not appear to us to present any equity in his behalf. The relief prayed for is extraordinary. Before a court of equity would take charge through a receiver of the immense business detailed in the complaint, and break up the business combination as it now exists, it would require a very meritorious case. Plaintiff alleges

that he is the owner of 10 shares of the common stock of the railroad company of the par value of $1,000 and of "substantial value." If the stock had any appreciable value, it is strange that it was not stated. The stock is quoted in the stock market reports at from $5 to $6.50 per share. It does not appear when plaintiff became the owner thereof, except that he has been the owner for some time. This is as indefinite as the words "substantial value." If the plaintiff had been the owner of the stock for any appreciable time, why was it not stated? According to the allegations of the complaint, the grievances of which plaintiff complains have existed since the organization of the railroad company in 1909, about seven years. If the plaintiff or his predecessors have known for this period of time of the acts complained of, the right to appeal to a court of equity for relief has been greatly weakened.

It does not appear from the complaint that the plaintiff has been damaged by the acts of the defendants in any sum whatever. On the contrary, it would seem that the arrangement complained of is very beneficial to the railroad company, and therefore to its stockholders. The plaintiff seems to rely upon the allegation that the acts of the defendant railroad company, if continued, will subject it to suits for penalties and forfeitures; but the fear of such a result is greatly lessened when we take into consideration that for about seven years the acts complained of have been committed, and no suits for penalties have yet been commenced. We think it also plainly appears from the complaint that the real trouble which has given rise to the present suit is the quarrel between the Ketchum Coal Company and the railroad company in regard to the shipment of coal, and, while this fact would not bar the plaintiff from instituting this action, it does bear strongly upon the equities alleged to exist in his behalf.

[1] We are of the opinion, however, that we are not authorized to consider the equities of the case so far as the alleged violation of the Sherman Anti-Trust Act is concerned, as the plaintiff, not having shown any injury to himself, other than as a member of the general public, may not prosecute this action. Minnesota v. Northern Securities Co., 194 U. S. 48, 70, 24 Sup. Ct. 598, 48 L. Ed. 870; Wilder v. Corn Products Co., 236 U. S. 165, 174, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; Union Pacific R. R. Co. v. Frank, 226 Fed. 906, 141 C. C. A. 510; Paine L. Co. v. Neal, 244 U. S. 459, 37 Sup. Ct. 718, 61 L. Ed. 1256 (filed June 11, 1917).

[2] So far as the commodities clause of the Interstate Commerce Act is concerned, it would seem the same rule should prevail. The only cases which we know of that were brought for relief against a violation of said clause, were prosecuted by the United States, viz. United States ex rel. Attorney General v. Delaware & H. Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836, United States v. Lehigh Valley R. R. Co., 220 U. S. 257, 31 Sup. Ct. 387, 55 L. Ed. 458, and United States v. D. L. & W. R. R. Co., 238 U. S. 516, 35 Sup. Ct. 873, 59 L. Ed. 1438. The primary duty to enforce the Interstate Commerce Act in behalf of the public rests upon the Interstate Commerce

Commission. By section 12 of the act (Comp. St. 1916, § 8576) it is provided:

"And the Commission is hereby authorized and required to execute and enforce the provisions of this act; and, upon the request of the Commission, it shall be the duty of any district attorney of the United States to whom the Commission may apply to institute in the proper court and to prosecute, under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this act, and for the punishment of all violations thereof."

But, if we are in error in regard to this last proposition, we are satisfied that the plaintiff has not made a sufficient showing of wrongs suffered to authorize a court of equity to grant the extraordinary relief prayed for. Dimpfell v. Ohio, etc., Co., 110 U. S. 209, 3 Sup Ct. 573, 28 L. Ed. 121; Taylor v. Holmes, 127 U. S. 489, 8 Sup. Ct. 1192, 32 L. Ed. 179; Corbus v. Gold Mining Co., 187 U. S. 455, 23 Sup. Ct. 157, 47 L. Ed. 256; Dannmeyer v. Coleman (C. C.) 11 Fed. 97; Venner v. A., T. & S. F. Ry. Co. (C. C.) 28 Fed. 581; Beshoar v. Chappell, 6 Colo. App. 323, 40 Pac. 244; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

The decree below is therefore affirmed.