## CONSOLIDATED CEMENT CORPORATION v. PRATT.

### No. 432.

Circuit Court of Appeals, Tenth Circuit.

Feb. 14, 1931.

Clifford Histed, of Kansas City, Mo. (Edwin C. Austin, of Chicago, Ill., on the brief), for appellant.

J. N. Tincher, of Medicine Lodge, Kan., and Louis R. Gates, of Kansas City, Kan., for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from an order granting a temporary injunction. The appellee, who was plaintiff below, alleged in his petition for the writ that appellant is a Delaware corporation engaged in the operation of three cement plants, two of which were in the state of Kansas and one in the state of Michigan. That appellee was the owner of more than $300,000.00 par value of its seven per cent. cumulative preferred stock out of a total issue of $1,392,800.00 of such stock; that said company had outstanding mortgage bonds in the amount of approximately $3,-600,000.00 and approximately $1,000,000.00 in six and one-half per cent. gold notes due March 1st, 1931; that said company had paid no dividends on its preferred stock for several years; that said gold notes were issued through a firm of investment bankers of Chicago, two of whose officers were upon the board of directors of appellant; that said appellant has not sufficient cash on hand with which to pay the $1,000,000.00 in gold notes; that for many months appellant's officers had endeavored to negotiate with said investment company with a view of having it communicate with its customers, to whom the said gold notes had been marketed, for the purpose of arranging an extension or refunding of said notes; that, by reason of the knowledge possessed by the said investment company as to the holders of said notes and the contact and influence which said investment company had with the holders, it was in a position to influence the holders of the gold notes, and thus procure for appellant most advantageous terms for extension or refunding said notes, and by reason of the fact that said investment company was represented upon appellant's board of directors, said investment company owed and still owes to appellant the duty to use its best efforts to obtain the most advantageous terms for such extension or refunding, but said two directors in violation of their duties to appellant did delay and refuse to submit to appellant or to the holders of the notes proposals for extension or refunding said notes until sometime in the month of January, 1931, when it was too late for appellant to avail itself of any other means of procuring an extension or refunding prior to the maturity of said notes. That thereupon the said two directors submitted to appellant a proposal for the extension of said notes on the following terms; that approximately $250,000.00 should be paid in cash on said notes, and new notes should be issued in lieu

of the remainder of said outstanding notes to mature serially in amounts of $50,000.00 on March 1, 1932, $50,000.00 on March 1, 1933, $150,000.00 on March 1, 1934, $250,000.00 on March 1, 1935, and $250,000.00 on March 1, 1936, with interest at seven per cent, and that additional notes should be issued to cover commissions and expenses of said new issue in the amount of $50,000.00 to $100,000.00. That payment of approximately $250,000.000 in cash by appellant on March 1, 1931 will so deplete the working capital that its ability to carry on its business will be greatly impaired, and it will be in danger of curtailing its operations or continuance therein unless banking credits can be arranged; that plaintiff is informed and believes the working capital of appellant would be less than $50,000.00 and inadequate if the plan should be carried out. That the said two directors and the said investment company in making said proposal for refunding said $1,000,000.00 of gold notes are not actuated by a consideration of the interests of appellant but by a desire to reflect credit on the investment company and strengthen its position with the holders of said gold notes; that no committee had been appointed representing the note holders, and no deposits of notes had been made, and no attempt had been made by the two directors representing the investment company or by the investment company to cause the formation of such committee, although plaintiff was informed and believed that appellant's officers had repeatedly suggested that such action be taken. That during the preceding two years appellant had lost a large sum of money, as the plaintiff is informed and believes to the amount of approximately $150,000.00, and if the proposed plan should be carried out the stockholders would be greatly damaged in that interest charges would be increased on the refunding notes and on money which must be borrowed for operating capital; that they will be likewise damaged by impairment of appellant's ability to conduct the operations to a reasonable decree of efficiency, and, as appellee was informed and believed, the corporation will be unable to increase its earnings if the proposed plan be consummated, and thus the stockholders will be greatly injured. That the two directors representing the investment company have, as appellee was informed and believed, undertaken to create and have created a situation wherein the other directors of appellant have been placed in a position where they have been coerced by the two said directors to vote for an acceptance of said proposed plan.

That in consequence a majority of the directors threaten to vote for an acceptance of said proposed plan, unless restrained by the court. That appellee was informed and believed that, if said plan should be rejected, a committee will be appointed representing the note holders with whom negotiations can be had and from whom terms can be obtained in refunding said gold notes whereby the rate of interest thereon will not be increased, serial maturities will be eliminated and also the cash payment of $250,000.00 and the injurious effect of making said payment in cash will be avoided, appellant's fixed charges will not be increased or its working capital impaired; and that such negotiations will be conducted with representatives of note holders in consideration of their interest and the interests of appellant rather than a consideration of the interests of said investment company. That notice has been given that a. meeting of the board of directors will be held in Chicago on the 27th day of January, 1931, for the purpose of voting upon said proposed plan of refunding said gold notes; that appellee was informed and believed that appellant's directors, acting under coercion and duress as aforesaid, will, unless restrained, adopt and accept said plan and put it into effect; that a stockholders' meeting would be unavailing by reason of the fact that a large majority of the voting stock is owned and controlled by the directors, and the voting of said stock would be under the same coercion and duress. That the carrying out of said plan would injure the value of the preferred stock owned by appellee as he was informed and believed, to an amount in excess of $100,000.00; that the acts of the said directors representing said investment company and said investment company constitute a fraud, both at law and in equity, against appellant and its stockholders, and appellee brings this suit on behalf of himself and other stockholders similarly situated and on behalf of the corporation, which by reason of the matters alleged cannot act on its own behalf.

A temporary injunction was prayed for, that it be made permanent on final hearing, restraining appellant, its directors, officers and agents from approving and carrying out the proposed plan, from issuing any notes to refund or extend the said existing gold notes at a higher rate of interest than that now existing, or from adopting any other plan for the refunding or extending of said notes, except with the approval of the court, and, if the court deem it necessary, that a receiver

be appointed for the business and affairs of appellant.

The averments of the petition were verified by the appellee not upon his knowledge but upon his belief. The appellee also verified only on belief a motion for a restraining order and temporary injunction in which no additional facts were stated. A restraining order was issued on January 24, 1931. On February 3 appellant filed a motion to dismiss the bill on the ground that it seeks control and management of the internal affairs of the corporation by the court, and the court was without authority to exercise visitorial control over appellant; and that the bill wholly failed to state a cause of action or any ground for relief in equity. Appellant also filed an affidavit of its president wherein it stated that on January 26, 1931, before being advised of the commencement of the suit, appellant had abandoned the refunding plan of which appellee complained, and none of its officers or directors have attempted to carry out or intend to carry out said plan; that at no time had the investment company and the two directors that represented its interests on appellant's board (said board being composed of eleven directors) coerced or attempted to coerce the other directors to vote for the abandoned plan or for any other refunding plan, but on the contrary said investment company and said two directors have cooperated with all other directors of appellant with a view of devising a refunding plan best suited to appellant's interests; that a note holder's committee had been appointed representing holders of the gold notes, and the investment company and the holders of a majority of both preferred and common stock had agreed unanimously on a refunding plan which, but for this litigation, would have been proposed to the note holders and which, if accepted by the note holders, would completely dispose of the immediate financial necessities of appellant. To this affidavit was attached a balance sheet showing the condition of appellant's business on December 31st, 1930, and said affidavit stated, as also appears from said balance sheet, that appellant is a solvent and going concern, and if it be permitted to deal with its note holders without interference by the court it would have no difficulty in refunding its notes due March 1, 1931; that the balance sheet represented the condition of appellant on February 3, 1931, except for such changes that had resulted from the normal conduct of appellant's business since December 31, 1930; that further delay in offering a refunding plan to appellant's note holders or further interference with the normal function of appellant's officers and directors will jeopardize the prospects of refunding said notes and may result in consequences fatal to the best interests of appellant's stockholders. Said balance sheet is set out in the margin.[1] No proof was offered by appellee to support the allegations and charges in the bill, except the bill itself and the motion for restraining order and temporary injunction, both of which were verified only on the belief of appellee.

On February 3, 1931, the court entered the order appealed from in which it is ordered:

"That the defendant Consolidated Cement Corporation, its directors, officers, agents and any and all persons acting under or in conjunction therewith, be and they hereby are restrained and enjoined from voting for, adopting, or taking any steps to carry into effect the proposed plan for refunding or extension of approximately one million dollars in principal amount of six and one-half per cent. gold notes of the defendant corporation, maturing March 1st, 1931, or any part thereof by paying thereon twenty-five per cent. of the principal amount thereof in cash, and issuing in payment of the remaining principal amount of said notes, new serial notes bear-

---

[1] Consolidated Cement Corporation.

Condensed Balance Sheet December 31, 1930.

Assets.

| | |
|---|---:|
| Cash | $ 469,963 27 |
| Accounts receivable | 209,680 68 |
| Inventories | 649,320 01 |
| Prepaid Expenses | 51,515 68 |
| Investment and other Sundry Assets | 111,176 20 |
| Plant, Properties and Quarry Lands—at appraised sound values, as determined by American Appraisal Company, depreciated to date of acquisition plus subsequent additions at cost, subject to reserve for depreciation per contra | 6,575,152 99 |
| Unamortized Bond Discount and Expenses, Organization Expense, etc. | 300,834 98 |
| Good Will | 1 00 |
| | $8,367,644 81 |

Liabilities.

| | |
|---|---:|
| Accounts Payable, Accrued Salaries, Local Taxes, Interest, etc., and Reserve for Federal Taxes | $ 174,123 57 |
| Five Year 6½% Gold Notes less amount held in Treasury for cancellation due 3-1-31 | 1,001,000 00 |
| First Mortgage 6½% Gold Bonds—Series A due March 1, 1941 less amount held by Trustee for cancellation | 3,617,300 00 |
| Reserve for Depreciation and Depletion subsequent to date of acquisition of properties | 1,089,070 33 |
| Reserve for Contingencies and Insurance | 108,522 57 |
| 7% Cumulative Preferred Stock | 1,392,500 00 |
| No Par Value Common Stock | 100,950 00 |
| Capital Surplus | 727,199 86 |
| Earned Surplus | 156,678 43 |
| | $8,367,644 81 |

ing seven per cent interest, and that they and each of them, be restrained and enjoined from adopting, carrying out, performing or taking any steps toward adopting, carrying out, or performing any agreement or plan for the refunding or extension of said gold notes under which a sum in excess of ten per cent thereof be paid in cash, or under which notes or other securities are issued in lieu thereof bearing a higher rate of interest than six and one-half per cent, or from adopting any plan for refunding or extending said gold notes without the approval of this court."

No facts showing fraud on the part of the directors of appellant or its officers are charged in the bill. There is an allegation of legal fraud as a mere conclusion of the pleader. Such conclusion is not only not justified but is contradicted by the facts alleged. It is not charged that appellant was or is insolvent. The balance sheet and affidavit show the solvency of appellant and show that it is able to meet its current obligations, including said notes, out of its current assets and the legitimate use of credit. So it clearly appears that the bill asks the court to enjoin and restrain appellant's broad of directors from conducting and carrying on in a legitimate way its internal affairs and management, and that the court, itself, take over the direction and management of the corporate functions; and the court in its order did so. They were enjoined "from adopting any plan for refunding or extending said Gold Notes without the approval of this court." In view of the order sought and made, we can well understand why the appellee also in its bill asked the court to appoint a receiver, if that should become necessary; because the action of the court in the respect stated would necessarily precipitate such a result.

It is an elementary principle of law that a court has no power or right to intermeddle with internal affairs of a corporation, in the absence of fraudulent conduct on the part of those who have been lawfully entrusted with the management and conduct of its affairs. Republican Mountain Silver Mines v. Brown (C. C. A.) 58 F. 644, 24 L. R. A. 776; North American Land & Timber Co. v. Watkins (C. C. A.) 109 F. 101, 105; Corbus v. Alaska Treadwell Gold Mining Co., 187 U. S. 455, 463, 23 S. Ct. 157, 47 L. Ed. 256. The principle is so well settled and established in both federal and state jurisdictions that it seems unnecessary to give further citations.

We conclude the bill is wholly without equity. Its allegations of facts and the facts

otherwise disclosed on application for the writ clearly show appellee is not entitled to the relief sought. It follows, notwithstanding this is an appeal from an interlocutory order, that this court has power to consider this case on the merits. Smith v. Vulcan Iron Works, 165 U. S. 518, 17 S. Ct. 407, 41 L. Ed. 810; Meccano, Limited, v. John Wanamaker, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822.

The order granting the injunction is reversed with directions to vacate such order, to vacate the order overruling appellant's motion to dismiss the bill, and to dismiss said bill. The mandate will issue forthwith.