Leo J. Kowalski, appellant, v. Nebraska-Iowa Packing Co., a corporation, et al., appellees, Sylvia Karnish, Administratrix of the Estate of Frank Podlazewski, deceased, intervener-appellant.

71 N. W. 2d 147

Filed June 24, 1955. No. 33682.

*Theodore L. Kowalski, Norman Denenberg,* and *Herbert Denenberg,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda, Thomas Freeman, William Ritchie,* and *Bernard E. Vinardi,* for appellees.

Heard before Simmons, C. J., Carter, Yeager, Chappell, Wenke, and Boslaugh, JJ., and Kokjer, District Judge.

Simmons, C. J.

Plaintiff is a stockholder in the Nebraska-Iowa Packing Company. He alleged that he brought this action for himself and all other stockholders similarly situated.

The Nebraska-Iowa Packing Company will hereinafter be called the Company. The action is against the Company, its officers and directors, and Wilson & Company, a corporation. Wilson & Company will hereinafter be called Wilson.

The Company for a number of years had been the owner of a packing plant which was leased to and operated by Wilson. As a result of an action approved by the stockholders, the Company sold the plant to Wilson and was proceeding to a dissolution of the Company. This action was brought to secure a decree holding for naught the action authorizing the sale and the sale to Wilson, and to restrain the sale and the dissolution of the Company.

After a series of amended pleadings and a petition in intervention, to which reference will later be made, issues were made and trial was had.

At the close of plaintiff's case-in-chief, the trial court sustained a motion to dismiss made by Wilson, the Company, and the directors then before the court.

The plaintiff and intervener appeal.

We affirm the judgment of the trial court.

The motions to dismiss were based on multiple reasons. Among them were the contentions that the plaintiff and intervener prior to the institution of this action had not taken the necessary steps to qualify them or either of them to bring a derivative action on behalf of the Company, and had not shown the necessary legal status to bring a stockholder's derivative action on behalf of the Company; and that neither the plaintiff nor intervener had made any attempt to exhaust their remedies within the corporation nor to persuade the stockholders or directors to act for the purpose of rescinding the transactions in controversy.

We determine that the action of the trial court was correct based on the above-recited elements of the motion to dismiss. We do not deem it necessary to examine or determine other questions presented.

In 1952, the officers of the Company negotiated a sale of the property involved to Wilson. Notice of a special meeting of the stockholders was sent to all stockholders June 24, 1952. The meeting was called for the purpose of approving or disapproving the contract of sale. This was accompanied by a letter to the stockholders. This was accompanied also by a card which authorized certain of the Company directors to be the proxies of the signatory stockholders at the meeting.

A second letter was sent July 12, 1952, to stockholders who had not responded to the first letter.

A third letter was sent July 26, 1952, to stockholders holding 20 or more shares who had not responded to either of the earlier letters.

The stockholders' meeting was held. Proxies representing 24,702 plus shares were received. The Company had outstanding 52,794 plus shares of stock.

The resolution approving the contract was unanimously adopted by the stockholders present in person and by proxies representing 30,471 plus shares of stock.

Plaintiff is the owner of 10 shares of stock in the Company.

December 4, 1952 (4 months after the stockholders' meeting of August 4, 1952), plaintiff filed his petition beginning this action. He alleged that he brought the action on behalf of the Company, and on behalf of himself and all others similarly situated. He alleged the corporate capacities of the Company and Wilson; the meeting of the stockholders; the favorable vote on the contract of sale and the sale; that the officers and directors had failed to exercise prudence and sound business judgment; that the sale price was not commensurate with actual market value; that it did not have the requisite approval of the stockholders; and the attempted dissolution of the Company.

On May 15, 1953, plaintiff filed an amended petition in which he amplified allegations of his original petition. He further alleged that the president and attorney

of the Company, being one and the same person, was guilty of a breach of fiduciary duties; that his letters to the stockholders contained false and misleading statements; and that the stockholders' meeting was held on the property of the Company rather than at its principal office. He alleged that it would be useless and unavailing to attempt to vindicate corporate rights of the Company through the corporation. By reference he based this upon allegations as to the property and the lease; the allegation that officers had secured proxies and voted them; the allegation that the president of the Company had received a fee of $25,000 from Wilson, and that it constituted a breach of duty; the allegation that the officers had failed to exercise any prudence or sound business judgment; and that the president had made false and misleading statements in the letters to stockholders prior to the stockholders' meetings. He alleged further that there was insufficient time to appeal to the stockholders.

There were subsequently filed amendments and supplemental amendments to the amended petition, not important here.

Although it is not important to our decision here, we think it right to point out that the $25,000 to be paid by Wilson to the Company for the account of its president "for services in working out and consumating this transaction" was specifically mentioned in the letter to the stockholders of June 24, 1952; it was also specifically recited in the proxy form sent out for the signature of the stockholders; and it was discussed in the letter of July 12, 1952, to the stockholders wherein it was recited that it was to the advantage of the Company to have Wilson pay that fee.

The petition in intervention was filed June 19, 1953, by the administratrix of a deceased stockholder's estate, joining in the prayer of the plaintiff. It was alleged that the estate was owner of 40 shares of the Company stock. It appears that in December 1953, this stock was as-

signed to Sylvia Karnish. She is thereafter treated. as the intervener.

Neither the plaintiff nor intervener testified at the trial. There was evidence that plaintiff was seriously ill from May 22, 1952, and got back to his desk about October 1, 1952. He was unable to attend the stockholders' meeting.

There is affirmative evidence that neither the plaintiff, the intervening administratrix, nor any other stockholder ever complained of this transaction to the president or board of directors of the Company between the date of the stockholders' meeting of August 4, 1952, and the date this litigation was started, nor did they ask that the sale be set aside or that the matter be reconsidered.

The Company had outstanding 52,794 plus shares of common stock; 30,471 plus shares of stock were voted in favor of approving the transaction here involved; and the owners of 22,323 plus shares did not vote.

The plaintiff and intervener represent an ownership of 50 shares.

Under the circumstances shown here, can they maintain a derivative action, purporting to represent the stockholders to redress an alleged wrong done to the Company?

Section 21-1,113, R. R. S. 1943, provides: "Every corporation operating or organized under this act, may at any meeting of its board of directors, mortgage, sell, lease or exchange all or substantially all of its property and assets, including its good will and its corporate franchises, and such sale, lease or exchange may be made upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, or other securities of, any other corporation or corporations, as its board of directors shall deem expedient and for the best interests of the corporation; provided, that such mortgage, sale, lease or exchange must first be authorized or later be approved by the affirmative vote of the holders of a majority of the stock issued

and outstanding given at a stockholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of a majority of the stock issued and outstanding; and provided further, that the articles of incorporation may require the vote or written consent of the holders of a larger proportion of the stock issued and outstanding."

The charge here goes basically to the decision taken at the stockholders' meeting.

The Legislature evidently intended that the questions presented originally by plaintiff should be advanced in the stockholders' meeting. That would be the obvious forum in the absence of the statute. Plaintiff did not avail himself of that forum and makes no showing of an effort to cause such a forum to be set up for 4 months thereafter before beginning this litigation. Assuming that he personally was disabled for the first 2 months of that period, it does not follow that the owners of the remaining shares of stock were unable to act. His plea of no sufficient time is obviously without merit.

In Fisher v. National Mtg. Loan Co., 132 Neb. 185, 271 N. W. 433, we held: "The cases seem to hold that there must be a demand that the stockholders as a body sue the directors before an individual stockholder may sue for himself or others so situated for the benefit of the corporation. There is one ·exception to this general rule, i.e., unless such request, for any reason, would be useless or unavailing. This exception seems to be recognized in most every case cited. The theory of the rule, and the exception, seems to be that the individual stockholder must exhaust all means of redress within the corporation itself before bringing such an action."

Our rule is in accord with the rule generally adhered to and followed by the courts. The rule is stated in 72 A. L. R. 628 as follows: "The cases are uniform in holding that there must be a request that the stockholders as a body sue the directors; or that an action be brought for their benefit, before an individual stock-

holder may bring an action in the interest of the corporation,—unless such a request would be useless and unavailing. In other words, an individual stockholder must exhaust all means of redress within the corporation before bringing an action in the interest of the corporation." See, also, 18 C. J. S., Corporations, § 525, p. 1210, § 564, p. 1280; 13 Am. Jur., Corporations, § 459, p. 502.

In Bartlett v. New York, New Haven & Hartford R. R. Co., 221 Mass. 530, 109 N. E. 452, the court held: "A stockholder of a corporation has no personal right of action against directors who have defrauded it and thus affected the value of his stock. Such wrongs are against the corporation itself and, except through that, have no relation to the stockholder. It is the corporation alone whose interests are directly concerned, whose rights are to be asserted, and to whose exclusive use the judgment, if recovered, must be paid. * * * A stockholder, before he can proceed in his own name but in behalf of the corporation for the redress of wrongs done to it, must establish that he has exhausted all available means to obtain relief through the corporation itself, unless the circumstances excuse him from so doing. That is a condition precedent. Facts showing that he has complied with this condition must be set forth in unmistakable terms in his bill. He must make an earnest and sincere and not a feigned or simulated effort to induce the managing officers of the corporation to take remedial action in its name. If he fails in this quarter, unless there is adequate reason to the contrary, he must resort to the stockholders and make an honest attempt to convince them that action ought to be instituted. Directors and the majority of stockholders are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders. It is an implied condition of becoming a stockholder in a corporation that its general policy shall be determined by the holders of a majority of the

stock and that disagreements as to its dominating policy and as to the details of its management shall be settled by the stockholders, and that recourse cannot be had to the courts to adjust difficulties of this sort. It is only from actual necessity, in order to prevent a failure of justice, that a suit in equity for the benefit of the corporation can be maintained by a stockholder."

Plaintiff pleads here that there were seven directors of the Company. Neither by pleading nor proof is there any suggestion that more than one might possibly have been moved by motive other than a good faith performance of duty toward the corporation and its stockholders. Plaintiff neither pleads nor proves an effort to persuade the officers and directors to act as he now contends they should have acted. There is no basis here for a finding that a demand upon them would have met with refusal. Plaintiff did not explore, in any wise, the attitude of the directors. He made no showing to them of the alleged basis of his suit. He ignored them. It is true that the directors who were served and answered resisted plaintiff's litigation, but that came after the transaction had been substantially completed with Wilson and after the charges set out in the pleadings had been made. The rule contemplates this action be taken before, and not after, litigation is initiated. The Supreme Court of the United States has held: "It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs." Corbus v. Alaska Treadwell Gold Mining Co., 187 U. S. 455, 23 S. Ct. 157, 47 L. Ed. 256.

Neither is there any basis here for a finding that an appeal to the stockholders would have been useless or unavailing. It was not tried. There is evidence that one stockholder, owner of 1,327 plus shares of stock, who was present at the stockholders' meeting and who was one of the two stockholders seconding the motion to approve the sale, received $1,000 of the $25,000 fee

paid the president, and that he worked for the sale. This evidence of payment was volunteered by the president of the Company. If that motive prompted the one stockholder, it does not follow that the owners of the remaining shares of stock aggregating more than 51,000 shares were so motivated.

On this record, the allegation that this is a derivative action, within the conditions as to pleading and proof required by the rule, is a patent fiction.

The trial court properly dismissed the cause. Its judgment is affirmed.

AFFIRMED.