**The JOLLES FOUNDATION, Inc.,**
Plaintiff-Appellant,

v.

**Donald R. MOYSEY, Individually and as District Director, Internal Revenue Service, Defendant-Appellee.**

No. 23, Docket 24467.

United States Court of Appeals
Second Circuit.

Argued Nov. 12, 1957.

Decided Dec. 6, 1957.

---

Alexander C. Dick, New York City, (James G. Mitchell, Clarence C. Meleney and Meleney, Mitchell & Dick, New York City, on the brief), for plaintiff-appellant, The Jolles Foundation, Inc.

John S. Clark, Asst. U. S. Atty., S. D. New York, New York City (Paul W. Williams, U. S. Atty., S. D. New York, New York City, on the brief), for defendant-appellee, Donald R. Moysey, Individually and as District Director, Internal Revenue Service.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

MOORE, Circuit Judge.

Plaintiff-appellant, The Jolles Foundation, Inc. (referred to as "the Foundation") brought this action against Donald R. Moysey, individually and as District Director, Internal Revenue Service, seeking a "judgment declaratory of its rights under said Constitution [the Constitution of the United States] pursuant to United States Code, Title 28, Section 2201," i.e., the Federal Declaratory Judgment Act. More specifically the Foundation prays for a decree that the Director has wrongfully and unlawfully deprived the Foundation of its property "by his exclusion of plaintiff's name from the list of organizations entitled * * * to the privilege of tax exemption." The government moved to dismiss the complaint (1) for failure to state a claim and (2) for lack of jurisdiction "because the complaint seeks a declaratory judgment with respect to Federal taxes as prohibited by Title 28, United States Code, Section 2201." The district court granted the motion to dismiss. The Foundation appealed.

The Foundation was organized on December 19, 1944 under the New York Membership Corporations Law primarily to assist individuals or organizations working for the relief "of the people of Poland, China and other countries affected by War." On November 4, 1947 the Deputy Commissioner of Internal Revenue ruled that the Foundation was "exempt from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code [26 U.S.C.A. § 101(6)] * * * as it is shown that you are organized and operated exclusively for charitable purposes." The Deputy Commissioner also advised the Foundation that it would "not be required to file income tax returns unless you change the character of your organization, the purposes for which you were organized, or your method of operation." Any such change was to be reported so that its effect on the exempt status might be determined.

On August 6, 1952 the Foundation, through its attorneys, notified the New York Collector's office that on May 19, 1952 it had filed a "Certificate of Change of Purposes" adding a purpose, in substance, to distribute to individuals, schools and libraries, books, pamphlets and other literature relating to historical matters, current events, civics, foreign policies and similar subjects and asked for confirmation that this additional purpose did not affect its tax-exempt status.

On November 10, 1952 the Assistant Commissioner advised the Foundation that its exempt status was terminated because "there has been a material change in your form of organization" but offered to "give further consideration to your status for Federal income tax purposes after you have actively operated for a year under the amendment of your charter" and outlined the form of statement required for a reconsideration of the Foundation's compliance with Section 101(6).

Subsequently, application having been made by the Foundation, the Acting Assistant Commissioner ruled that an analysis of the information submitted disclosed that the activities of the Foundation since May 19, 1952 "are not exclusively charitable or educational within the intendment of section 501(c) (3) of the Code of 1954" and that "you are not exempt from Federal income tax under that section of law."

After some further correspondence in which counsel for the Foundation indicated that no judicial review of the Commissioner's rulings was permissible and that "[t]he statutory remedy consists in the long and dilatory processes of assessment, conferences, appeals to the Tax Court, the Circuit Court of Appeals, and eventually through writ of certiorari to the Supreme Court of the United States," this action was commenced.

■ The Foundation is asking this Court to declare that it should have a tax-exempt status both now and in the future. In effect such a decree would operate as a mandamus against the Commissioner to compel him to reverse his position based upon the activities of the Foundation already held not to come within the exemption of Section 101(6). It is clear that the district court was without general original jurisdiction to issue an order compelling a public official to act with respect to his official duties. Wilson v. Wilson, 4 Cir., 1944, 141 F.2d 599; Youngblood v. United States, 6 Cir., 1944, 141 F.2d 912; Marshall v. Crotty, 1 Cir., 1950, 185 F. 2d 622.

■■ Quite apart from the question of whether there is an "actual controversy" and the express exception in the Declaratory Judgment Act removing from the courts the power to declare rights "with respect to Federal taxes," the court cannot presume to speak for the Commissioner or take over his duty to pass upon the tax status of organizations applying for exemption. His duty is to decide whether the particular activities submitted to him justify exemption. He cannot be foreclosed by declaratory judgment from reviewing the purposes and activities of applicants for exempt status when and as they are presented to him for decision. The Foundation's own case illustrates the situation. In 1947 the facts warranted exemption; in 1952 a changed purpose brought termination. Its history and activities in 1954 did not produce any change of ruling but the Foundation may still avail itself of the right to show any change of activities and again seek exemption. A declaratory judgment upon the facts here set forth would serve no purpose. Nor is it the function of the courts to decide hypothetical future cases not yet in being. No judgment herein could be held to pre-adjudicate the issue of the Foundation's status for the future, thus stripping the Internal Revenue Service of its power to pass upon that question.

■ No tax has been assessed against the Foundation or even threatened. Thus there is no actual controversy between the Foundation and the District Director. The complaint mentions a donor who had to pay a gift tax on a donation. Had the donor chosen to contest the tax, the law afforded him procedural methods to litigate the question.

■ Regardless of the many forms of relief sought and the lengthy recital of assumed violations of constitutional rights the Foundation's action is "with respect to Federal taxes." In this field the courts have no jurisdiction to enter declaratory judgments. Taylor v. Allan, 10 Cir., 1953, 204 F.2d 485; Noland v. Westover, 9 Cir., 1949, 172 F.2d 614, certiorari denied 337 U.S. 938, 69 S.Ct. 1515, 93 L.Ed. 1744; Wilson v. Wilson, supra.

The so-called exemption list, exclusion from which the Foundation claims amounts to an unlawful deprivation of property, is merely a record of those entitled to an exempt status. The items of injunctive relief sought as to the list and in other respects are as the court below correctly stated "merely details in execution of the declaratory judgment sought and equally outside the scope of this court's jurisdiction." The cases cited by the Foundation as creating a doctrine of exceptional circumstances all involve radically different fact situations not applicable or persuasive here.

The Foundation has been deprived of no constitutional rights despite its elaborate arguments to the contrary. If a

tax is assessed both the Foundation and prospective donors are afforded appropriate procedural remedies to test the exempt nature of the organization upon the facts as they then may exist. See Bendheim v. Commissioner, 2 Cir., 1954, 214 F.2d 26. The Foundation by Procrustean methods is endeavoring to make its disagreement with the Commissioner fit into a remedy wholly inappropriate to the situation. This it cannot do.

The judgment appealed from is affirmed.