**"AMERICANS UNITED" INC., et al.,**
**Appellants,**

v.

**Johnnie M. WALTERS, Commissioner of Internal Revenue.**

**No. 71–1299.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1972.

Decided Jan. 11, 1973.

Certiorari Granted June 4, 1973. See 93 S.Ct. 2752.

Mr. Alan Morrison, with whom Mr. Franklin C. Salisbury, Washington, D. C., was on the brief, for appellants.

Mr. Leonard J. Henzke, Jr., Atty., Tax Div., Dept. of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and Grant W. Wiprud, Atty., Tax Div., Dept. of Justice, were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

This case comes to us on appeal from an order in the district court denying appellants' (plaintiffs below) petition to convene a three-judge district court pursuant to the provisions of 28 U.S.C. § 2282 (1970), and granting appellee's motion to dismiss. For the reasons stated at length below we affirm the action of the district court as it pertained to the individual appellants involved, but as to the corporate appellant reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Appellant Americans United, incorporated as "Protestants and Other Americans for Separation of Church and State," is organized under the laws of the District of Columbia and is a non-profit educational corporation. On July 3, 1950, the Commissioner of Internal Revenue issued a ruling that Americans United qualified as tax exempt under § 101(6) of the Internal Revenue Code of 1939, the predecessor to § 501(c)(3) of the 1954 Code.[1] Consequently, for a period of nearly twenty years not only was Americans United free from taxation upon its income, but also contributors to the corporation were entitled to the deductions provided under § 170 of the 1954 Code (§ 23(q) of the 1939 Code).[2] On April 25, 1969, a letter ruling from the Service revoked the 1950 ruling, holding that Americans United had violated §§ 170(c)(2)(D) and 501(c)(3) of the Code by devoting a substantial part of its activities to attempts to influence legislation. More particularly, the letter ruling stated that although part of Americans United's activities could be classified as "educational" or "charitable" within the meaning of § 501(c)(3) of the Code, it was, nonetheless, an "active advocate of a political doctrine." The majority of the corporation's activities were held to be in furtherance of the following goals: "the mobilization of public opinion; resisting every attempt by law or the administration of law which widens the breach in the wall of separation of church and state; working for the repeal of any existing state law which sanctions the granting of public aid to church schools; and uniting all 'patriotic' citizens in a concerted effort to prevent the passage of any federal law allotting, directly or indirectly, federal education funds to church schools."

While Americans United still retained a tax exempt status as an organization described in § 501(c)(4) of the Code,[3] the removal of its § 501(c)(3) exemption allegedly proved to be most damaging. Americans United states that its resulting removal from the list of § 170 corporations to whom tax free contributions could be made dried up its well of con-

1. 26 U.S.C. § 501(c)(3) (1970):
 Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

2. Organizations which have secured rulings that they are tax exempt under § 501(c)

(3) are described in I.R.S. Publication No. 78, Cumulative List, Organizations Described in Section 170(c) of the Internal Revenue Code of 1954. The requirements for §§ 501(c)(3) and 170(c)(2) are nearly identical in every respect.

3. 26 U.S.C. § 501(c)(4) (1970):
 Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

tributory resources to such an extent that it operated at a deficit for the first time in its history during fiscal year 1970. Consequently, on July 30, 1970, this action was commenced in the United States District Court for the District of Columbia. Two individual plaintiffs, Archer and Lowell, apparently suing as taxpayers who intended in the future to contribute to Americans United, joined with Americans United in bringing the class action.

The amended complaint in the district court averred violations of various first and fifth amendment liberties and guarantees: (1) §§ 170 and 501, and the action of the Commissioner in giving force and effect thereto, were unconstitutional and void insofar as they denied § 501(c)(3) status to the corporate appellant by reason of its exercise of first amendment rights, and likewise denied individual appellants the privilege of deducting the contributions used as a vehicle to exercise their first amendment rights. (2) Since what was a "substantial part" in the case of Americans United was not a "substantial part" in the case of other, larger organizations opposed to appellants' viewpoint, the change of status because of the substantiality of the activities of one organization as opposed to another in expressing opinions and influencing legislation was an unreasonable classification against Americans United, and by reason thereof Americans United and other organizations similarly situated were being discriminated against and denied equal protection of the laws in violation of the fifth amendment of the United States Constitution. (3) Appellants claimed that their tax dollars were being used by reason of §§ 170 and 501 in a manner that aided and strengthened churches whose size permitted their influencing of legislation to be "relatively less substantial than that of the corporate [appellant]," and that appellee's actions in enforcement thereof constituted violations of the establishment and free exercise clauses of the first amendment. (4) The exemption clause of § 501(c)(3) amounted to an invalid delegation of legislative power "in that the statutory standards of 'substantiality' and 'propaganda' [were] lacking in specificity for the carrying out of the purpose of Section 501(c)(3)." (5) Finally, the defendant acted arbitrarily and capriciously in abuse of his discretion in applying, in this situation, the "substantial influencing" clause of the statutory exemption of § 501(c)(3).

■ Appellants' complaint founded jurisdiction for the action upon 28 U.S. C. § 1331 (1970) (civil action where amount in controversy exceeds $10,000 and which arises under the Constitution and laws of the United States), 28 U.S. C. § 1340 (1970) (whereby jurisdiction is bestowed in the federal district court in any civil action arising under an Act of Congress providing for internal revenue), and § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1970) (making final agency action subject to judicial review). Appellants also sought the convention of a three-judge district court pursuant to 28 U.S.C. §§ 2282[4] and 2284 (1970), and requested the following relief: (1) Declaratory judgment that the "exemption clauses of Section 501(c)(3) [were] separable from the remainder of the section and [were] null and void" as unconstitutional under the first and fifth amendments, and as an invalid delegation of legislative power.[5] (2) Judgment "re-

4. 28 U.S.C. § 2282 (1970):

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

5. In this manner the appellants seek to continue the viability of § 501(c)(3) without the challenged "substantial part" exception to the exemption. As the Court of Appeals for the Tenth Circuit has recently stated: "Where a court is compelled to hold such a statutory discrimination invalid, it may consider whether to

quiring" the appellee to "reevaluate" corporate appellant as a § 501(c)(3) charitable corporation and to reinstate corporate appellant on the Cumulative List, Organizations Described in Section 170(c) of the Internal Revenue Code of 1954, if found to be eligible under the newly constituted § 501(c)(3). (3) Judgment restraining the appellee from enforcing §§ 170(c) and 501(c)(3) so as to deprive the individual appellants "of the benefit of tax advantages in the exercise of their First Amendment rights by reason of the unconstitutionality of those sections." (4) Judgment that appellee acted in an arbitrary and capricious manner in changing the status of corporate appellant. (5) In the alternative, judgment requiring appellee to reopen the revocation proceedings and reevaluate the corporate appellant "in the light of the final decision in this case."

Appellee filed a motion to dismiss, based essentially on 28 U.S.C. § 2201 (1970),[6] which prohibits declaratory judgments "with respect to Federal taxes," and 26 U.S.C. § 7421(a) (1970),[7] which prohibits suits "for the purpose of restraining the assessment or collection of any tax." The trial court denied appellants' petition to convene a three-judge court, finding that no substantial constitutional question was raised, and granted appellee's motion to dismiss, citing National Council on the Facts of Overpopulation v. Caplin, 224 F.Supp. 313 (D.D.C.1963).

Alleging error in both aspects of the trial court's order, appellants bring this appeal. Contending that no taxes have been assessed or collected, that this is a civil rights rather than tax case, and that they have no other adequate remedy, appellants maintain that the provisions of 26 U.S.C. § 7421(a) (1970) and 28 U.S.C. § 2201 (1970) cannot be used to prohibit the declaratory and injunctive relief sought. They further contend that they have raised substantial constitutional questions meriting the invoking of a three-judge court under the standards established in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U. S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). Appellee's posture on appeal is somewhat different, of course, and in addition to the grounds listed by the trial judge for dismissing the action he relies upon the doctrine of governmental immunity, claiming this to be an unconsented suit against the United States. Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914).

## II. JURISDICTION

### 1. *Introduction*

■ The statutes providing for three-judge "constitutional" courts, adopted to avoid impolitic action on the part of lone federal district judges in matters of broad regulatory scope, are procedural rather than substantively jurisdictional in nature. A complaint which raises substantial constitutional

---

treat the provisions containing the discriminatory underinclusion as generally invalid, or whether to extend the coverage of the statute." Moritz v. Commissioner, 469 F.2d 466 at p. 470 (10 Cir. 1972). *Cf.* Welsh v. United States, 398 U.S. 333, 361, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring), and Skinner v. Oklahoma, 316 U.S. 535, 542–543, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

6. 28 U.S.C. § 2201 (1970):
 In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

7. 26 U.S.C. § 7421(a) (1970):
 Except as provided in sections 6212 (a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
 The exceptions provided are not applicable to this case.

questions and otherwise meets the requirements of § 2282 can and should be dismissed if independent district court jurisdiction is found wanting. "[T]he provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction." Ex Parte Poresky, 290 U.S. 30, 31, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933). This court has held that a dismissal for want of jurisdiction is properly a matter for a single district judge without considering the question of convening a three-judge court. Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611 (1960), cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960). Accord, National Council on the Facts of Overpopulation v. Caplin, 224 F.Supp. 313 (D.D.C.1963). The first order of business for the single district judge is simply put (although, as here, not so simply decided): Does the district court have jurisdiction even to consider the applicability of a three-judge panel, or are the plaintiffs out of court for lack of subject matter jurisdiction?

■ The anti-injunction statute (26 U.S.C. § 7421 (1970)) by its terms denies jurisdiction to "any court" in actions seeking to enjoin the assessment or collection of taxes. If such a statute is applicable here the appellants cannot be afforded the relief requested, regardless of the substantiality of the constitutional questions raised. See, e. g., Harvey v. Early, 160 F.2d 836 (4th Cir. 1947).

■■ Although its legislative history may be "shrouded in darkness," [8] the raison d'etre of § 7421(a) was illuminated by Chief Justice Warren in Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962):

The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. (Emphasis added, footnote omitted.)

See also State Railroad Tax Cases, 92 U.S. 575, 613–614, 23 L.Ed. 663 (1875). Section 7421(a) was thus born of administrative and governmental necessity, used to prevent intermeddling in the tax collection process. An offspring of the equity rule that a suit to enjoin the collection of taxes was not maintainable unless an adequate remedy at law was lacking, its language is much stronger and more encompassing in scope. Even if it can be shown that irreparable injury will result if the collection is effected, § 7421(a) bars a suit for an injunction in the absence of very special circumstances. See Enochs, supra, 370 U.S. at 6, 82 S.Ct. 1125.

■ The history of the Declaratory Judgments Act and § 2201 is somewhat different. When initially promulgated in 1934,[9] the phrase "except with respect to Federal taxes" was absent from § 2201. Consequently, federal taxpayers (innovative as they are) quickly utilized it to obtain declaratory judgments holding various tax statutes unconstitutional, something they were barred from accomplishing under the anti-injunction statute.[10] Congress (innovative as it is)

8. See Note, Enjoining the Assessment and Collection of Federal Taxes Despite Statutory Prohibition, 49 Harv.L.Rev. 109 (1935).

9. Act of June 14, 1934, ch. 512, 48 Stat. 955.

10. See, e. g., Penn v. Glenn, 10 F.Supp. 483 (W.D.Ky.1935), app. dismissed per curiam, 84 F.2d 1001 (6th Cir. 1936), and F. G. Vogt & Sons, Inc. v. Rothensies, 11 F.Supp. 225 (E.D.Pa.1935). Although both courts refused to grant injunctive relief, they expected the tax collector to "respect the decision." If he did not do so and the taxpayer was forced to sue for a refund, "the trial court would probably be justified in refusing him a certificate of probable cause, and thus he and his bond would be liable for the judgment obtained." 11 F.Supp. at 231. This was a neat circumvention of the anti-injunction statute, but one that Congress did not appreciate.

quickly reacted and amended § 2201 to include the contentious phrase.[11] The Senate Finance Committee, in reporting out the amended version, stated that the "application of the Declaratory Judgments Act to taxes would constitute a radical departure from the long-continued policy of Congress [as represented today by § 7421(a)] with respect to the determination, assessment, and collection of Federal taxes."[12] Literally broader than § 7421(a) in its preclusion of tax oriented remedies, the § 2201 exception has literally been found coterminus with that provided by § 7421(a). McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972). *See also* Bullock v. Latham, 306 F.2d 45 (2d Cir. 1962), and Tomlinson v. Smith, 128 F.2d 808 (7th Cir. 1942). We believe that to be a correct interpretation, one soundly based on the history of the exception and on the paradoxicalness of authorizing injunctive relief while depriving courts the authority to declare the rights of the parties in connection with the injunctive relief. The breadth of the tax exception of § 2201 is co-extensive with the effect of § 7421(a), and so the applicability of the latter to our situation is determinative of jurisdiction.

### 2. *Individual Appellants*

The springboard of the action before us—namely that the removal of Americans United from the status of those corporations to whom tax deductible contributions can be made has wreaked havoc upon its financial stature—is the same for both the individual and corporate appellants. They seek to keep Americans United afloat. However, the posture of the appellants and the effect that the relief sought would have upon them is distinctively different. Stripped to its barest essentials, the individual appellants' relief relates directly to the assessment and collection of taxes. They seek, despite their averments that no taxes have been assessed and that this is a civil rights rather than tax

case, to enjoin the appellee from assessing or collecting taxes on those dollars contributed by them to Americans United. In paragraph 3 of the relief portion of appellants' amended complaint this becomes evident:

> [Plaintiffs pray that the following relief be granted:] Judgment enjoining defendant Thrower from enforcing Sections 170(c) and 501(c)(3) of Title 26 U.S.C.A., so as to deprive the individual plaintiffs and others similarly situated of the benefit of tax advantages in the exercise of their First Amendment rights by reason of the unconstitutionality of those sections.

The allegations that the tax will be assessed and collected in violation of their constitutional rights is to no avail. *See* Dodge v. Osborn, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557 (1916); Harvey v. Early, 160 F.2d 836 (4th Cir. 1947); Moon v. Freeman, 245 F.Supp. 837 (E.D.Wash.1965); National Council on the Facts of Overpopulation v. Caplin, 224 F.Supp. 313 (D.D.C.1963). The allegation that no tax has as yet been assessed, and that therefore the action is somehow without § 7421(a), we find to be equally without merit. In the words of Chief Judge Sirica in *National Council, supra,* 224 F.Supp. at 314, "[t]he Court cannot agree that the immunity of a tax assessment from court-imposed restraint has anything to do with the timing of that restraint." Finally, the individual appellants have not shown the high probability of success on the merits that warrants the non-application of § 7421(a) under the standards enunciated in Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962):

> [I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, [Miller v. Standard Nut Margarine Co., 284 U.S. 498,

---

11. Act of August 30, 1935, ch. 829, § 405, 49 Stat. 1027.

12. S.Rep. No. 1240, 74th Cong., 1st Sess. 11 (1935).

52 S.Ct. 260, 76 L.Ed. 422 (1932)], the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in "the guise of a tax." *Id.*, [284 U.S.] at 509 [52 S.Ct. at 263].

We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.

The action brought and the relief sought by the individual appellants directly ranges within the ambit of § 7421(a), and as to them the action of the district court in dismissing the case was correct.

### 3. *Corporate Appellant*

Americans United, at the present time exempt from taxation on income by virtue of 26 U.S.C. § 501(c)(4) (1970), does not seek in this lawsuit to enjoin the assessment or collection of its own taxes. Because of the "tax breaks" attendant to contributions to corporations qualifying under § 170(c) of the Code, qualification thereunder is a precious possession and removal from the Cumulative List, Organizations Described in Section 170(c) of the Internal Revenue Code of 1954 is a damaging—sometimes fatal—injury to the financial status of any "charitable" organization. Potential contributors with a minimum of business acumen are careful to get the most for their contributed dollar, and one certain way not to do so is to contribute to non-§ 170 corporations. Appellant, therefore, presented with the dollar dilemma of finding prospective contributors closing their wallets, seeks to have the court restrain the Commissioner from meting § 501(c)(3) and § 170(c) qualifications in the alleged unconstitutional manner. A necessary side effect of any relief, of course, will be to allow contributions which otherwise would be made with after tax dollars to become deductible. Consequently, the appellee alleges that this is in essence a suit to restrain the assessment or collection of a tax and barred by § 7421(a).

McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972), involved a class action brought by a black American denied membership in an Elks Lodge because of his race. The plaintiff sought to enjoin the Secretary of Treasury from granting tax benefits to fraternal and nonprofit organizations which excluded nonwhites from membership. The statutes involved were similar to those in the case before us, granting various exemptions both to the organizations and their contributors. The plaintiff alleged that the statutes were either unconstitutional, unconstitutonally interpreted, or that the benefits granted thereby were in violation of Title VI of the Civil Rights Act of 1964. The defendant moved to dismiss citing §§ 2201 and 7421(a), but a three-judge district court denied the motion. Chief Judge Bazelon, writing for the court, stated:

> Plaintiff's action has nothing to do with the collection or assessment of taxes. He does not contest the amount of his own tax, nor does he seek to limit the amount of tax revenue collectible by the United States. The preferred course of raising his objections in a suit for refund is not available. In this situation we cannot read the statute to bar the present suit. To hold otherwise would require the kind of ritualistic construction which the Supreme Court has repeatedly rejected. Even where the particular plaintiff objects to his own taxes, the Court has recognized that the literal terms of the statute do not apply when "the central purpose of the Act is inapplicable." In the present case, the central purpose is clearly inapplicable. It follows that neither § 7421(a) nor the exception to the Declaratory Judgment Act prohibits this suit.

*Id.* at 453–454 (footnotes omitted).

A case from the opposite side of the restraint coin, wherein the Commissioner threatened to remove the tax exempt status of an organization because of racially discriminatory policies, is Bob Jones University v. Connally, 341 F. Supp. 277 (D.S.C.1971). Fearing that a drop in its level of contributions would cause irreparable harm, the University sought a preliminary injunction restraining the Commissioner from removing its § 501(c)(3) qualification. Faced with identical §§ 2201 and 7421(a) arguments, the district judge granted the injunction. The court found that the gravamen of the plaintiff's complaint was not to ask the court to substitute its views for that of the Commissioner, *see* Jolles Foundation, Inc. v. Moysey, 250 F.2d 166 (2d Cir. 1957), but rather to prevent the Commissioner from acting "beyond the authority granted by the constitution or by the Congress, and to read into the Internal Revenue Laws powers that are not expressly given and that were never intended by Congress." 341 F.Supp. at 282–283. The court went on to state:

> If there were no contest as to the legality or the power of the defendants to revoke under existing law plaintiff's tax exempt status because of its admitted racial discriminatory admissions policy, but was instead a case involving the applicability of such a rule to the plaintiff, it would then appear to be a case where this court was asked to preempt discretionary power of a federal officer which it would be powerless to do. . . . Plaintiff is not challenging the applicability of the rule, but the legality of the rule itself.
>
> Bob Jones University is not seeking a declaratory judgment, but rather seeks to enjoin the defendants from exercising alleged illegal and *ultra vires* power and authority. Consequently, it is concluded that the levy, assessment, and collection of a tax is not the main issue. Plaintiff does not contest the amount or method of any levy, assessment, or collection, or evidence to be used in making such de-

termination of taxes that might become due. Plaintiff is seeking to enjoin what it contends to be illegal and unconstitutional actions or threatened actions on the part of officials of the United States Government which it claims would lead to irreparable harm . . . .

*Id.* at 283.

Here, as in *Bob Jones,* the essence of appellants' attack is not against the applicability of a test or their ability to qualify under presently existing standards. As the appellee correctly points out in his brief, "[appellants] do not seriously contend that Americans United qualifies under Section 501(c)(3) as written. Rather, they contend that the clause disqualifying organizations which devote a substantial part of their activities to political propaganda and lobbying should be elided as unconstitutional, and they seek a declaratory judgment to that effect."

Appellee principally relies upon Jolles Foundation, Inc. v. Moysey, *supra.* Although there is language in *Jolles* regarding § 2201 we believe it to be distinguishable and not persuasive. In *Jolles* the appellant alleged that the Commissioner erred in his determination of its tax exempt qualification, and brought an action which the court correctly viewed as in the nature of mandamus "against the Commissioner to compel him to reverse his position based upon the activities of the Foundation already held not to come within the exemption . . . ." 250 F.2d at 169. We submit that the *Jolles* case did not involve the alleged unconstitutionality of a taxing statute, but a challenge respecting the judgment of the Commissioner, and manifestly "the court cannot presume to speak for the Commissioner or take over his duty to pass upon the tax status of organizations applying for exemption." *Id.*

Here, as in *McGlotten* and *Bob Jones,* no tax has been or will be assessed against the corporate appellant. The restraint upon assessment and collection is

at best a collateral effect of the action, the primary design not being to remove the burden of taxation from those presently contributing but rather to avoid the disposition of contributed funds away from the corporation. The corporation, alleging constitutional violations of an identical nature to that of the individual appellants, irreparable injury, and an inadequate legal remedy,[13] does so in a posture removed from a restraint on assessment or collection. We find, as did the courts in *Bob Jones*, *McGlotten*, and impliedly the court in Green v. Kennedy, 309 F.Supp. 1127 (D.D.C.1970), on

permanent injunction, Green v. Connally, 330 F.Supp. 1150 (D.D.C.1971), aff'd per curiam, Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971),[14] that it would be an all too encompassing interpretation of § 7421(a) to consider it as precluding a suit of this nature, and refuse to so hold.[15]

We do not adopt the doctrine that § 7421(a) is inapplicable so long as a party does not seek to restrain the collection or assessment of its own taxes. Our holding is much narrower. In those situations where a non-taxpayer sues in the stead of the taxpayer,[16] *e. g.,*

---

13. Since Americans United qualifies as a tax exempt organization pursuant to § 501(c)(4) of the Code, the normal avenue of challenge, tax refund litigation, is not available. Appellee in his Supplemental Memorandum and at oral presentation has for the first time suggested two additional "adequate" legal remedies available to the appellant corporation. These are the federal social security and unemployment tax refund litigations, since § 501(c)(3) organizations are exempt from both taxes while § 501(c)(4) organizations are exempt from neither.

Appellant points out that although not required to pay social security taxes while exempt under § 501(c)(3), it elected to do so. A termination of such an election requires two years advance notice and cannot be made if the election has been in effect more than eight years, as it was here. Moreover, under 26 U.S.C. § 3121 (k)(3) (1970), an organization which once terminates its election to pay those taxes voluntarily cannot renew the election. Although the unemployment tax refund litigation is not fraught with perils of equal magnitude, it is subject to certain conditions and, we feel, is so far removed from the mainstream of the action and relief sought as to hardly be considered adequate.

14. *Green* involved a class action brought by black students and their parents to enjoin the Secretary of Treasury from granting tax exempt status to private schools discriminating against blacks. A three-judge district court was convened and, Judge Leventhal writing, determined that the Internal Revenue Code could not be interpreted as granting a tax exempt status to such organizations. Although faced with governmental insistence that the relief sought was barred by §§ 2201

and 7421(a), the court did not address the problem but granted the injunctive relief. The case was affirmed *per curiam* and without opinion by the Supreme Court, but as by that time the Commissioner had "voluntarily" altered the rules to comply with the decision, and the government did not press the appeal, the precise force and effect of the affirmance is questionable.

15. The ultimate effect of the *Green* and *McGlotten* litigations was to increase the tax revenue of the United States, while at least theoretically the effect of *Bob Jones* and the case at hand is to decrease the tax revenue. We do not believe, and appellee has in fact agreed, that such a fact is of distinguishable merit. It is untenable that a party seeking to have an entire section declared unconstitutional, thus removing the exemption and theoretically increasing the tax revenue, should be treated differently from one seeking to remedy the discriminatory underinclusion by striking the unconstitutional clause, and thus theoretically decreasing the tax revenue.

In reaching our conclusion regarding the applicability of § 7421(a) we have considered, and found unpersuasive, the decisions in Liberty Amendment Committee of the U.S.A. v. United States, Civ.No.70–721–HP (C.D.Cal. June 19, 1970), aff'd per curiam, No. 26,507 (9th Cir. July 7, 1972), and Crenshaw County Private School Foundation v. Connally, 343 F. Supp. 495 (M.D.Ala.1972).

16. Arguably Americans United's purpose could be that of "representing" its remaining contributors who now face the assessment of taxes on their contributed dollars —a sort of "end run" maneuver to avoid the proscriptions of § 7421(a) that we have found to apply to suits brought by

the shareholder suits brought on behalf of a reluctant corporation, Corbus v. Alaska Treadwell Gold Mining Co., 187 U.S. 455, 464, 23 S.Ct. 157, 47 L.Ed. 256 (1903), *cf.*, Helvering v. Davis, 301 U.S. 619, 639–640, 57 S.Ct. 904, 81 L.Ed. 1307 (1937), or where the tax itself directly operates to place a financial burden upon the non-taxpayer, *e. g.*, where the valuation of an estate for estate tax purposes would affect the tax liability of a non-taxpayer at a future date, West Chester Feed & Supply Co. v. Erwin, 438 F.2d 929 (6th Cir. 1971), when a tax levied upon processing oil would directly affect one about to enter the processing business, Gardner v. Helvering, 66 App.D.C. 364, 88 F.2d 746 (1936), cert. denied, 301 U.S. 684, 57 S.Ct. 784, 81 L.Ed. 1342 (1937), *au fond* it is a suit to restrain the collection or assessment of a tax "indirectly" levied upon the plaintiff, and within the purpose and proscription of § 7421(a).

 What we have then is a hybrid sort of fellow. The challenge upon which we reverse runs not to the exercise of discretion or the everyday working affairs of the Commission, something we feel history and good sense implore us to leave alone, nor is it concerned with taxes levied either directly or "indirectly" upon the corporate appellant, something which § 7421(a) mandates us to leave alone.[17] Finally, an alternate legal remedy in the form of adequate refund litigation is unavailable. The lack of a meaningful alternate form of relief is important herein for two reasons: first, its absence solidifies our

belief that the situation *sub judice* is without the purpose and expected scope of § 7421(a), and second, its absence renders equitable relief most appropriate. We suspect that the birthrate of such a hybrid will be so low that the proverbial "flood gates" to judicial review of Internal Revenue Service action will remain closed.

### 4. *Sovereign Immunity*

 Appellee, relying chiefly upon Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914), urges the court to recognize this suit as one against the United States to which consent has not been given, and hence barred by the doctrine of sovereign immunity. We feel that the appellee has failed to recognize this suit as rightly falling within the exceptions to the doctrine as reiterated by the Supreme Court in Dugan v. Rank, 372 U.S. 609, 622, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Those exceptions relate to (1) actions by officers beyond their statutory powers, and (2) actions within the scope of their authority, when the powers themselves or the manner in which they are exercised are constitutionally void. The appellants do not challenge the right of the Commissioner to adopt rules and regulations, but they do challenge his right to enforce a statute which they assert violates various constitutional liberties. This clearly falls within the "exception" almost as broad as the "rule," that "sovereign immunity does not prevent a suit against a state or federal officer who is acting either beyond his authority or in violation of the Constitution." [18]

---

those contributors—but we do not believe such to be a realistic appraisal of the situation. Americans United is concerned about its own preservation which is threatened not by the indirect burden of the tax upon them, but by the "unconstitutional" action of the Commissioner resulting in the driving of prospective contributors to other "charities."

17. Standing to sue and ripeness problems, neither of which we find to preclude the lawsuit before us, could also work to prevent other litigation which arguably would

be without the scope of §§ 2201 and 7421 (a).

18. K. Davis, Administrative Law Treatise 522 (1958). Professor Davis treats Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) as the "foundation case" for such a rule:

If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that

## III. SUBSTANTIAL CONSTITUTIONAL QUESTION

The single district court judge below denied appellants' motion to convene a three-judge panel pursuant to 28 U.S.C. § 2282 (1970), for the stated reason that the challenge raised no substantial constitutional questions. We reverse and remand with respect to the only remaining appellant in this litigation, Americans United, with instructions to promptly convene a § 2282 panel.

▇▇ In Bulluck v. Washington, 152 U.S.App.D.C. 39, 468 F.2d 1096 (1972), rehearing en banc, July 14, 1972, we have recently had an opportunity to restate the scope of a district court's inquiry (and consequently our scope of review) when confronted with an application for a § 2282 panel. The court is limited to questioning (1) whether the constitutional questions raised are substantial, which in turn is limited to a determination of whether they are "obviously without merit" or so clearly unsound by reason of previous decisions of the Supreme Court "as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933); (2) whether the complaint at least formally alleges a basis for equitable relief; and (3) whether the case presented otherwise comes within the requirements of the three-judge panel. Idlewild Bon Voyage Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

▇▇ As our discussion of the case to this point has shown, what appellant effectively seeks here is a restraint on the enforcement of the "substantial part" clause of § 501(c)(3). It accomplishes this by seeking a declaratory judgment that the section is unconstitutional, and by requesting injunctive relief to force the Commissioner to reclassify it and other similarly situated corporations as tax exempt if they are found to qualify. This type of action, affecting legislation of broad regulatory scope and amounting to a restraint on its enforcement as written and interpreted, is within the § 2282 mandate. Satisfied that the other requirements for the three-judge panel are present, and that equitable relief is properly requested, we turn to the substantiality question.

Although as can be seen from our earlier listing [19] appellants originally raised a multitude of possible constitutional violations, at oral argument and in its Reply Brief it has narrowed its focus, and we believe wisely so, to the "discriminatory" aspects of § 501(c)(3). Basically, this is that since larger, wealthier organizations can engage in conduct identical to that of appellant without, because of their size, falling within the "substantial part" category of § 501(c)(3) and thereby losing their precious tax exempt status (and more precious listing among those corporations to whom tax free contributions can be made), § 501(c)(3) is unconstitutionally discriminatory in violation of the equal protection ramifications of the due process clause of the fifth amendment. See Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 844 (1954).[20] We find

---

case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

*Id.* at 159–160, 28 S.Ct. at 454. *See also* Georgia R. R. & Banking Co. v. Redwine, 342 U.S. 299, 304–305, 72 S.Ct. 321, 96 L.Ed. 335 (1952).

19. *See* p. 1173, *supra.*

20. It is true that in Helvering v. Lerner Stores Co., 314 U.S. 463, 468, 62 S.Ct. 341,

343, 86 L.Ed. 343 (1941), Justice Douglas wrote that "[a] claim of unreasonable classification or inequality in the incidence or application of a tax raises no question under the Fifth Amendment which contains no equal protection clause." The great weight of authority today, however, as exemplified by *Bolling*, Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964), and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), is that "[w]hile

such a claim, novel as it may be, neither obviously without merit nor foreclosed by previous Supreme Court decisions.

Appellee relies chiefly upon Cammarano v. United States, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959), but *Cammarano,* while disposing of appellants' claim that first amendment rights are violated by the questioned statute, does not attempt to deal with possible discriminatory conduct. In *Cammarano* liquor dealers had expended funds in advertising campaigns against statutory resolutions in Washington and Arkansas which would have effectively closed their businesses, and sought to deduct their costs as ordinary business expenses. The lower courts ruled that "the payments . . . were 'expended for . . . the . . . defeat of legislation' within the meaning of Treas.Reg. 111, § 29.23(0)–1 and were therefore not deductible as ordinary and necessary business expenses under § 23(a)(1)(A) of the Internal Revenue Code of 1939." *Id.* at 501, 79 S.Ct. at 527. The court, per Justice Harlan, continued:

> Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code. Nondiscriminatory denial of deduction from gross income to sums expended to promote or defeat legislation is plainly not " 'aimed at the suppression of dangerous ideas.' "

*Id.* at 513, 79 S.Ct. at 533. Americans United, on the other hand, alleges just that discriminatory conduct found lacking in *Cammarano.* This discrimination relates solely to the "size" of the organization, which appellants allege is directly related to its wealth and power structure, and comes into play during and because of the exercise of first amendment protected liberties. By allowing larger, richer organizations more "dollar punch" in terms of "propagandizing" and "influencing legislation" before their respective activities are considered "substantial," the Commissioner is accused of following the mandate of § 501(c)(3) and treating identical activity differently, solely on the basis of the size, or wealth, of the acting party.

Nearly every jurist and attorney today is aware of the flood of cases before the bench raising important questions, at least in the context of the fourteenth amendment equal protection clause, concerning the interpretation of "fundamental rights," "suspect categories," and their resultant "compelling state interest test." A case similar to the redoubtable Serrano v. Priest, 5 Cal.3d 584, 96 Cal. Rptr. 601, 487 P.2d 1241 (1971), which struck down California's system of public school financing as violative of the fourteenth amendment, and straightforwardly classified both "wealth" and "education" as categories calling for stricter justification in terms of equal protection, is presently submitted before the United States Supreme Court. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972). The Court's decision in that case should prove most instructive in an area of concern before us —"discrimination" of this type as within the "wealth" category, and the status of "wealth" as giving rise to the compelling interest test.

If discrimination exists here it relates to the exercise of the most fundamental of rights, those protected by the first amendment,[21] and raises questions concerning the directness of its relationship

---

the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' " 377 U.S. at 168, 84 S.Ct. at 1190.

21. *See* dissent of Marshall, J., in California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), for discussion of classifications based on speech. *See also* Speiser v. Randall, 357 U.S. 513, 78

to wealth. We are aware that the various tests of which we speak have arisen in the context of the fourteenth amendment, but find that they are nonetheless relevant to the consideration of whether the government has exercised its taxing powers in such a discriminatory fashion as to violate the due process guaranties of the fifth amendment. This is neither a frivolous challenge nor one which, as of the writing of this opinion, has been foreclosed by the Supreme Court.

■■■ We want to stress that our opinion is in no way meant to state our views of the merits of this case beyond that required: namely, that the possibility of *success is not so certain as to* merit the *Enochs* exception with respect to § 7421(a), yet not so frivolous or foreclosed as to merit denial of the § 2282 motion. The *discrimination* problem may ultimately prove to be a mirage, or even a muddle, but it certainly is not maggot-pated. The question merits a three-judge panel.

Reversed and remanded for further proceedings consistent with this opinion.

WILKEY, Circuit Judge, concurring:

I concur unreservedly in Judge Tamm's opinion for the court, all the more willingly because his opinion is a model of lucidity in a field of law—taxation—in which that quality is as rarely found in either judicial decisions or legislation as sunlight on the dark side of the moon.

Since we have decided no issue on the merits, except that the constitutional issues are sufficiently serious to require decision by a three-judge court, I believe it appropriate to raise a question for the consideration of the three-judge court which was not briefed by the parties and is not dealt with by our court's opinion.

As I see it, the basis of our decision here is that there is a substantial constitutional question because the challenged tax provision discriminates on the basis of wealth (size), and because the Supreme Court is currently considering cases which may say that such distinctions need to be closely analyzed. Although other statutes are relevant, the vital statute at issue is 26 U.S.C. § 501(c)(3) (1970), quoted in footnote one of the court's opinion. Making a careful analysis of this statute, the first part states why tax exemption is granted—and that relates to the *purpose* of the organization. Thereafter are listed several factors which will nullify the tax-exempt status granted by the first part of § 501(c)(3). One of the *dis*qualifications for tax-exempt status is expressed in the phrase, ". . . no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, . . ."

And this disqualification phrase is what this case is all about. 26 U.S.C. § 501(c)(3) *first* ties tax status to the *purpose* of the organization—and the "no substantial . . . influence legislation" disqualification test (like the disqualification reference to private earnings or political campaigns) *is aimed at assuring some purity in that purpose.*

It is arguable that a small organization that spends almost all of its funds lobbying is not organized or conducted for the same purpose as a large organization, which may spend quantitatively as much, but which proportionately devotes most of its activities to unquestionably exempt purposes. If we make an analysis by following the impact of the donor's dollar, a gift to "Americans United" has "more punch" on the legis-

S.Ct. 1332, 2 L.Ed.2d 1460 (1958), a case which although decided on procedural due process grounds discussed the effect of tax exemptions:

To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech.

Its deterrent effect is the same as if the State were to fine them for this speech. The appellees are plainly mistaken in their argument that, because a tax exemption is a "privilege" or "bounty," its denial may not infringe speech. *Id.* at 518, 78 S.Ct. at 1338.

lative front than a gift to a large church organization which spends only 1% of its income on lobbying activities.

In that sense, the large organization is not engaged in what can reasonably be called "identical conduct." The statute does not give any greater privilege of speech to large organizations—other than the greater amount of impact any group can have if it raises more money. Rather, the interpretation of equal protection sought by "Americans United" would give a greater right of speech—by emasculating the "purpose" rationale of § 501(c)(3)—to small organizations. We cannot ignore the "purpose" rationale, because *purpose* is the *only* ground for tax exemption under § 501(c)(3).

Furthermore, if the larger groups are seen as engaged in "identical conduct" —what is to be the bench mark? If the purpose of the tax statute is to be preserved at all, then the large church organizations probably must hold to devoting a small percentage of their resources to lobbying. Is that *quantitative* amount then to guide—so that a small organization, with total funds amounting only to the tiny percentage which the large organization devotes to this purpose, could devote 100% of its funds to lobbying and still be exempt?

In short, it is certainly arguable that small groups are not being treated differently by § 501(c)(3) because they are small, but because they are obviously operating for a different purpose if they devote their comparatively small funds on a much different proportionate basis to propaganda for legislation.

I have raised the issue above by stating only one side of the argument. There are, of course, counterarguments.[1] We are not here deciding this or any other issue on the merits, but since neither party has seen fit to bring this is-

sue to the courts' attention, I feel it of sufficient importance to raise it for such consideration as the three-judge court and parties may wish to give it.

1. Some counterarguments may be derived from William G. Halby's article, "Is the Income Tax Unconstitutionally Discriminatory?", 58 A.B.A.J. 1291 (December, 1972). Others may be inspired by the reflection that, if 200 years ago men revolted on the principle that "Taxation without representation is tyranny", then today men may rise in righteous wrath because taxation with representation but beyond human comprehension is even worse.